# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| WENDY HUDSON-SWOOPE, | ) | Case No. 1:24-cv-01183 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | James E. Grimes, Jr. |
| MRO CORPORATION (dba | ) | |
| MEDICAL RECORDS ONLINE, | ) | |
| INC.), *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## OPINION AND ORDER

Plaintiff Wendy Hudson-Swoope sued Defendants MRO Corporation and the Cleveland Clinic Foundation, individually and on behalf of all others similarly situated, in State court. Plaintiff claims that Defendants conspired to conduct a fraudulent scheme to overcharge patients who requested access to their medical records. On July 12, 2024, MRO removed this action to federal court, invoking jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d). Then, MRO moved to stay pending arbitration or, in the alternative, to dismiss for lack of standing. The Cleveland Clinic joined MRO's motion and contemporaneously moved to dismiss for failure to state a claim. For the reasons that follow, the Court **GRANTS** Defendants' motion to stay pending arbitration and **STAYS** this matter pending arbitration.

## STATEMENT OF FACTS

On Defendants' motions to dismiss, the complaint alleges the following facts, which the Court accepts as true and construes in the light most favorable to Plaintiff, as it must in the present procedural posture.

### A.  Request for Medical Records

On April 22, 2024, Plaintiff Wendy Hudson-Swoope, through her attorney, faxed a letter to South Pointe Hospital, which the Cleveland Clinic operates, requesting electronic copies of her medical records from emergency room visits between January 19, 2024 to April 22, 2024.  (ECF No. 1-1, ¶¶ 4–7, PageID #13–14; ECF No. 12-2, PageID #98.)  Ms. Hudson-Swoope provided a signed authorization allowing the release of her medical records to her attorney, identifying him as her "designated third-party."  (ECF No. 12-2, PageID #99–100.)  Her letter stated:  "If you charge a fee for producing a copy of my [protected health information], please email or fax a pro-forma invoice to George Mineff, Jr. Attorney at Law prior to any record production.  Neither I nor my designated third party shall be responsible for any unapproved fees."  (*Id.*, PageID #99.)  Further, the letter specifically invoked certain provisions of federal law and related federal regulations.  (*Id.*, PageID #101.)  The same day, Ms. Hudson-Swoope faxed a letter informing the custodian of records that Ohio recently revised State law to limit the cost for a patient to retrieve her medical records to $50.00.  (*Id.*, PageID #102; *see* Ohio Rev. Code § 3701.741(B)(1)(b) ("[T]he total cost for that access or for the electronic transmission, and all related services, shall not exceed fifty dollars.").

On April 24, 2024, MRO confirmed receipt of Ms. Hudson-Swoope's records request and advised that it was doing so on behalf of South Pointe Hospital. (ECF No. 12-3, PageID #109; *see also id.*, PageID #110–11.) A similar notice on April 25, 2024, specifically referenced the Ohio statute limiting the cost to patients for retrieving their records. (*Id.*, PageID #111.)

### B.    Invoice and Payment

On April 29, 2024, MRO sent Ms. Hudson-Swoope's attorney an invoice for $70.64 for fulfilling her request for electronic medical records. (*Id.*, PageID #112.) The invoice included fees for search and retrieval, the number of pages, and sales tax. (*Id.*) The invoice included a mandatory arbitration clause:

> By proceeding with this order, you are representing that you: have reviewed, understood, and approved the charges; have agreed to pay them; and have agreed to the following terms. Any dispute relating to the charges in this invoice must be presented before proceeding with this order. Any dispute not so presented is waived. Presentation of a dispute must be made by telephone (610) 994-7500 Opt. 1. All disputes regarding the charges in this invoice, whether presented by you or by MRO, must be resolved by arbitration under the Federal Arbitration Act through one or more neutral arbitrators before the American Arbitration Association (AAA). Your dispute will be resolved by arbitrators, and not by a judge or a jury.

(*Id.*) Further, the mandatory arbitration clause contained a waiver of the right to proceed on behalf of a class or in any representative capacity:

> Class arbitrations are not permitted. Disputes must be brought only in the claimant's individual capacity and not as a representative or member of a class. An arbitrator may not consolidate your dispute with the dispute of anyone else nor preside over any form of class proceeding. Upon request by you at the time a dispute is presented, MRO will pay the AAA fee for arbitration of your dispute.

(*Id.*)  On May 31, 2024, Ms. Hudson-Swoope's attorney wrote a check to MRO for the amount of the invoice.  (ECF No. 12-4, PageID #114.)  Then, Ms. Hudson-Swoope received her requested medical records.  (ECF No. 1-1, ¶ 9, PageID #14.)

## STATEMENT OF THE CASE

Based on these events, Plaintiff filed a class action complaint against MRO and the Cleveland Clinic in State court in Ohio.  (ECF No. 1-1.)  Plaintiff asserts claims for unjust enrichment, conversion, fraud, agency, and conspiracy (Counts 1 through 5).  (*Id.*, ¶¶ 27–56, PageID #18–22.)  She alleges that MRO was unjustly enriched by defrauding Plaintiff and the putative class of those similarly situated.  (*Id.*, ¶¶ 27–46, PageID #18–21.)  Further, Plaintiff claims that MRO, as an agent of the Cleveland Clinic, conspired with it to overcharge Plaintiff and the putative classes for access to medical records.  (*Id.*, ¶¶ 47–56, PageID #21–22.)

Plaintiff seeks certification of two classes.  (*Id.*, ¶ 12, PageID #14–15.)  Class A consists of "[a]ll persons in Ohio to whom Defendant provided medical records, and charged more than the amounts set forth in R.C. 3701.741."  (*Id.*, PageID #14.)  Class B consists of "[a]ll persons in Ohio to whom Defendant provided medical records on behalf of The Cleveland Clinic Foundation, and charged more than the amounts set forth in R.C. 3701.741."  (*Id.*, PageID #15.)

MRO timely removed this action to federal court under the Class Action Fairness Act, 28 U.S.C. § 1332(d).  (ECF No. 1, ¶ 1, PageID # 1.)  Then, MRO moved to stay pending arbitration or, in the alternative, to dismiss for lack of standing.  (ECF

No. 12.)  The Cleveland Clinic joined MRO's motion and filed its own motion to dismiss.

## JURISDICTION

Because of the limited jurisdiction of the federal courts, the Court has an independent obligation to examine its own jurisdiction to ensure that it has the authority to proceed.  *See, e.g.*, *Nikolao v. Lyon*, 875 F.3d 310, 315 (6th Cir. 2017) (citations and quotations omitted); *Mercurio v. American Express Centurion Bank*, 363 F. Supp. 2d 936, 938 (N.D. Ohio 2005).  "[F]ederal courts have a duty to consider their subject matter jurisdiction in regard to every case and may raise the issue *sua sponte*." *Answers in Genesis of Ky., Inc. v. Creation Ministries Int'l, Ltd.*, 556 F.3d 459, 465 (6th Cir. 2009).  Jurisdiction is determined at the time of the filing of the complaint.  *See, e.g.*, *Farmer v. Fisher*, 386 F. App'x 554, 557 (6th Cir. 2010) (per curiam) (citing *Curry v. U.S. Bulk Transp., Inc.*, 462 F.3d 536, 540 (6th Cir. 2006)).

## I.  The Class Action Fairness Act

Under the Class Action Fairness Act, a relaxed form of diversity jurisdiction applies.  *Nessel ex rel. Mich. v. AmeriGas Partners, L.P.*, 954 F.3d 831, 841 (6th Cir. 2020).  The Act gives federal courts jurisdiction over interstate class actions where (1) a case has minimal diversity of citizenship, (2) the proposed class has at least 100 putative members, and (3) the aggregate amount in controversy exceeds $5 million. 28 U.S.C. § 1332(d)(2) & (d)(5)(B); *see also Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84–85 (2014).

No presumption against removal applies in cases invoking jurisdiction under the Class Action Fairness Act.  *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 595

(2013).  To the contrary, the Act embodies a strong preference that the federal courts hear class actions, if properly removed.  *Dart Cherokee,* 574 U.S. at 89 (citation omitted).  "CAFA was not to be read narrowly, but as a broad grant of jurisdiction in interstate class actions." *Davenport v. Lockwood, Andrews & Newman, Inc.*, 854 F.3d 905, 910 (6th Cir. 2017).  "Courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements." *Naji v. Lincoln*, 665 F. App'x 397, 398 (6th Cir. 2016).

The removing party has the burden to prove that the court has federal subject-matter jurisdiction.  *Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir. 1999); *see also Tennial v. Bank of America, N.A.*, No. 17-6377, 2020 WL 2530872, at *1 (6th Cir. Apr. 15, 2020).  In its notice of removal, MRO alleges that "the amount in controversy exceeds the sum or value of $5,000,000, there are more than 100 members of the putative class, and at least one member of the putative class is a citizen of a state different than that of MRO."  (ECF No. 1, ¶ 1, PageID #1.)

### I.A.    Minimal Diversity of Citizenship

The Class Action Fairness Act extends "the jurisdiction of federal courts from class actions between 'citizens of different States' to those in which 'any member of a class of plaintiffs is a citizen of a State different from any defendant.'"  *Roberts v. Mars Petcare US, Inc.*, 874 F.3d 953, 955 (6th Cir. 2017) (quoting 28 U.S.C. §§ 1332(a)(1) & (d)(2)(A)); *see also Dart Cherokee*, 574 U.S. at 84–85.  "State citizenship for the purpose of the diversity requirement is equated with domicile." *Von Dunser v. Aronoff*, 915 F.2d 1071, 1072 (6th Cir. 1990) (citations omitted).  "[A] corporation shall be deemed to be a citizen of any State by which it has been

incorporated and of the State where it has its principal place of business." *Schwartz v. Electronic Data Sys., Inc.*, 913 F.2d 279, 282 (6th Cir. 1990) (quoting 28 U.S.C. § 1332(c)(1)).

Plaintiff resides in Ohio. (ECF No. 1-1, ¶ 1, PageID #13.) MRO is incorporated in Pennsylvania, where it has its principal place of business. (*Id.*, ¶ 2, PageID #13; ECF No. 1, ¶ 13, PageID #3–4.) Although the Cleveland Clinic is an Ohio corporation with its principal place of business in Ohio, making it and Ms. Hudson-Swoope nondiverse, the Class Action Fairness Act requires diversity between only any putative class member and any defendant. Therefore, the parties are minimally diverse. *Dart Cherokee*, 574 U.S. at 84–85.

### I.B.    Number of Putative Class Members

A second requirement to extend jurisdiction to the federal courts under the Class Action Fairness Act is that "the class has more than 100 members." *Id.* (citing 28 U.S.C. § 1332(d)(1)); *see also Standard Fire Ins.*, 568 U.S. at 592; *Adams v. 3M Co.*, 65 F.4th 802, 803 (6th Cir. 2023).

Plaintiff alleges in her complaint that she "is informed and believes that there are hundreds of individuals in the Class" and that "[m]embers of the proposed class are so numerous that joinder of all members is impracticable." (ECF No. 1, ¶ 15, PageID #15.) Further, MRO claims that it "has responded to requests for, and provided copies of, medical records of health care facilities in Ohio regarding more than 100 patients who are citizens of Ohio." (ECF No. 1, ¶ 19, PageID #5.) Therefore, MRO carries its burden to meet this requirement. *Dart Cherokee*, 574 U.S. at 84–85.

### I.C.    Amount in Controversy

Finally, the Act requires that "the matter in controversy [must] excee[d] the sum or value of $5,000,000." *Id.* (quoting 28 U.S.C. § 1332(d)(2)). Where, as here, a plaintiff's complaint does not state the amount in controversy, the removal statute requires only a short and plain statement of the grounds for jurisdiction that need not contain evidence. *Id.* (citing 28 U.S.C. § 1446(c)(2)(A)). "Evidence establishing the amount is required by § 1446(c)(2)(B) only when the plaintiff contests, or the court questions, the defendant's allegation." *Id.* at 89. Therefore, absent the plaintiff's objection, the defendant need only plausibly allege that the class claim exceeds $5 million to assert the amount in controversy. *Id.* at 84, 87. To do so, the defendant need not "research, state and prove the plaintiff's claim for damages." *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 572 (6th Cir. 2001) (citation omitted).

"When determining the amount in controversy, punitive damages count." *Deditch v. Uber Techs., Inc.*, No. 1:24-cv-1488, 2025 WL 359289, at *2 (N.D. Ohio Jan. 30, 2025) (citing *Holton v. Erie Ins. Co.*, No. 1:24-cv-1428, at *2 (N.D. Ohio Oct. 11, 2024)). Further, "in states like Ohio . . . a notice of removal may make its own assertion of the amount in controversy, so long as that assertion is plausible and made in good faith." *Id.* (citation omitted).

Plaintiff does not contest MRO's assertion of the amount in controversy. MRO alleges that, under Plaintiff's proposed class definitions, "[w]ithin the last four years . . . the total of MRO's revenue for copies of medical records requests in Ohio is approximately $47 million." (ECF No. 1, ¶ 24, PageID #5.) Because Plaintiff does not question this "short and plain statement," which the Court finds plausible based

on its experience, MRO carries its burden to meet the amount in controversy under the Class Action Fairness Act. *Dart Cherokee*, 574 U.S. at 84, 87.

### I.D.    The Local Controversy Exception

Still, Congress told courts not to exercise jurisdiction under the Class Action Fairness Act in certain circumstances.  Of relevance here, the so-called local controversy exception mandates that federal courts not exercise jurisdiction under the Act where class actions have a more local character.  Under Section 1332(d)(4), "[a] district court shall decline to exercise jurisdiction . . . over a class action."  To determine whether the local controversy exception applies, the Act provides two separate tests, both of which must be met for courts to retain jurisdiction.

### I.D.1. 28 U.S.C. § 1332(d)(4)(A)

### I.D.1.a. Two-Thirds Aggregate

For the local controversy exception to apply, "greater than two-thirds of the members of all proposed plaintiff classes in the aggregate are citizens of the State in which the action was originally filed."  28 U.S.C. § 1332(d)(4)(A)(i)(I).  In this case, both putative classes consist of "[a]ll persons in Ohio to whom Defendant provided medical records."  (ECF No. 1-1, PageID #14–15.)  Therefore, the first requirement is met.

### I.D.1.b. Significant Defendant

Next, "at least 1 defendant is a defendant—from whom significant relief is sought by members of the plaintiff class; whose alleged conduct forms a significant basis for the claims asserted by the proposed plaintiff class; and who is a citizen of the State in which the action was originally filed."  *Id.* § 1332(d)(4)(A)(i)(II).  In this

case, the putative classes seek significant relief from the Cleveland Clinic, which retained MRO to handle records requests of the sort at issue. At bottom, this lawsuit arose from a request for the Cleveland Clinic's records of its treatment of Ms. Hudson-Swoope. Therefore, the second requirement is met.

### I.D.1.c. Principal Injuries in State

The local controversy exception to jurisdiction under the Class Action Fairness Act also requires that "principal injuries resulting from the alleged conduct or any related conduct of each defendant were incurred in the State in which the action was originally filed." *Id.* § 1332(d)(4)(A)(i)(III). Because most if not all of the putative class members reside in Ohio and incurred any injury under the Ohio statute, this requirement is met.

### I.D.1.d. Similar Class Actions

Finally, the local controversy exception applies where "no other similar class action was brought against any of the defendants in the instant action during the three years preceding the filing of this case." *Davenport*, 854 F.3d at 909. Under the statute, a federal court may exercise jurisdiction only if, "during the 3-year period preceding the filing of that class action, no other class action has been filed asserting the same or similar factual allegations against any of the defendants on behalf of the same or other persons." 28 U.S.C. § 1332(d)(4)(A)(ii). Although the statute aims to prevent copycat class actions in multiple forums, Congress "allow[ed] defendants to defend large interstate class actions in federal court." *Freeman v. Blue Ridge Paper Prods., Inc.*, 551 F.3d 405, 407 (6th Cir. 2008). Similar class actions need not be

brought in the same jurisdiction or allege the same legal theories to meet this prong of the statute.  *See Schutte v. Ciox Health, LLC*, 28 F.4th 850, 860 (7th Cir. 2022).

Based on the Court's research, a similar class action filed in the last three years satisfies this requirement of the statute.  *See Hollabaugh v. MRO Corp.*, No. 1049, Sept. Term, 2023, 2024 WL 2858350, at *1 (Md. Ct. Spec. App. June 6, 2024).  On May 11, 2023, the plaintiff in *Hollabaugh* filed a putative class action against MRO in State court in Maryland, alleging that a fee for an unsuccessful records search violated Maryland's Confidentiality of Medical Records Act.  *Id.* at *3.  In other words, the plaintiff claimed that MRO should not have charged a fee at all.  In contrast, this lawsuit involves a fee for electronic medical records that exceeds the maximum charge Ohio law allows.  In essence, both class actions allege that MRO charged more than State law permits in connection with providing medical records.  For purposes of Section 1332(d)(4)(A)(ii), these cases present similar factual allegations such that this requirement of the local controversy exception is not met, and the Court has jurisdiction under the Class Action Fairness Act.

### I.D.2. 28 U.S.C. § 1332(d)(4)(B)

Additionally, a court shall decline to exercise jurisdiction where "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens of the State in which the action was originally filed." 28 U.S.C. § 1332(d)(4)(B).  Although two-thirds or more of the putative class members here are citizens of Ohio where Plaintiff filed suit, MRO, which is a primary defendant, is a citizen of Pennsylvania.  Therefore, this test is not met.

*    *    *

For these reasons, Defendant carried its burden of establishing subject-matter jurisdiction under the Class Action Fairness Act.  The record shows that the Act's jurisdictional requirements are met and that the local controversy exception to the exercise of jurisdiction under the Act does not apply.

## II.    Standing

MRO maintains that "Plaintiff lacks standing because she has not suffered an injury in fact." (ECF No. 12, PageID #88.)  MRO contends that "Plaintiff has no claim of her own because she was not billed for the production of her medical records and did not pay MRO's invoice." (*Id.*, PageID #89.)  Further, it argues that Plaintiff also lacks standing because "she is not a party to the contract between MRO and Mr. Mineff," her attorney. (*Id.*)  These arguments lack merit.

"[A]t an irreducible minimum, Article III requires the party who invokes the court's authority to show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant" and that "the injury fairly can be traced to the challenged action and is likely to be redressed by a favorable decision." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 542 (1986) (cleaned up); *see also Uzuegbunam v. Preczewski*, 592 U.S. 279, 285 (2021).

"The relationship between client and attorney . . . is a quintessential principal-agent relationship." *C.I.R. v. Banks*, 543 U.S. 426, 436 (2005) (citations omitted). "When a lawyer represents a client, his acts become the client's acts, his knowledge the client's knowledge." *Lampe v. Kash*, 735 F.3d 942, 944 (6th Cir. 2013).  Plaintiff argues that she is "legally obligated to [her] attorney, George Mineff, Jr., for all the

12

costs and expenses for [her] personal injury claim described in this lawsuit, including the cost for medical records" and that she has been "financially and personally harmed by the overcharge." (ECF No. 16-3, ¶¶ 2–3, PageID #153.) Further, the record makes clear that Ms. Hudson-Swoope authorized her attorney to act on her behalf to obtain her medical records, "including, but not limited to production fees." (ECF No. 12-2, PageID #99–100.) In other words, Ms. Hudson-Swoope—not her attorney—bears the cost for obtaining the medical records at issue. In this regard, she claims an injury fairly traceable to the conduct of Defendants. *See Bender*, 475 U.S. at 542; *see also Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 58–59 (2d Cir. 2016) (noting that, where plaintiffs acted through counsel, the plaintiffs bear the ultimate expense and, "[i]f such a fee was unlawfully inflated, as plaintiffs here claim, it is sufficiently alleged that it is the client who was injured," and that such injury was "fairly traceable to the health care provider"). For these reasons, the Court determines that Plaintiff brings suit on her own behalf and has standing to do so.

## ANALYSIS

Defendants move to stay these proceedings pending arbitration under the Federal Arbitration Act. (ECF No. 12.) A "written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, . . . shall be valid, irrevocable, and enforceable[.]" 9 U.S.C. § 2. The "principal purpose" of the Federal Arbitration Act is to ensure "that private agreements to arbitrate are enforced according to their terms." *Volt Info. Scis., Inc. v. Board of Trs. of Leland Stanford Junior Univ.*, 489

U.S. 468, 478 (1989); *see also Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 664 (2010).  Section 2 of the Act "makes arbitration agreements 'valid, irrevocable, and enforceable' as written."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011).

Where an action is referable to arbitration, a court "shall on application of one of the parties stay" the case pending arbitration.  9 U.S.C. § 3; *see Smith v. Spizzirri*, 601 U.S. 472, 473–74 (2024).  Section 3 of the Act does not permit the Court to dismiss the case instead of issuing a stay where the dispute is subject to arbitration and a party requests a stay pending arbitration.  *Smith*, 601 U.S. at 478.

"Congress enacted the FAA to replace judicial indisposition to arbitration with a 'national policy favoring [it.]'"  *Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)).  The Act embodies "a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." *Concepcion*, 563 U.S. at 346 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).  The language of the Act creates "a body of federal substantive law of arbitrability."  *Moses*, 460 U.S. 1 at 24.

Courts have four tasks when considering a motion to stay proceedings pending arbitration under the Federal Arbitration Act:  (1) "determine whether the parties agreed to arbitrate"; (2) "determine the scope of that agreement"; (3) if a party asserts federal statutory claims, "consider whether Congress intended those claims to be nonarbitrable"; and (4) if the court concludes that some, but not all, of the claims in

14

the action are subject to arbitration, "determine whether to stay the remainder of the proceedings pending arbitration." *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).

## I. Arbitration

MRO argues that the Court "should stay Plaintiff's lawsuit because the claims at issue are subject to a mandatory arbitration clause and class action waiver." (ECF No. 12, PageID #82.) It claims that Plaintiff's personal representative and attorney agreed to arbitrate claims arising out of billing disputes by paying the invoice for delivery of the electronic medical records at issue without attempting to negotiate its conspicuous mandatory arbitration clause and class action waiver. (*Id.*, PageID #80 & #82–83.) Plaintiff argues that she "has no agreement with MRO to arbitrate." (ECF No. 16, PageID #134.)

### I.A. Federal Right

Under regulations promulgated pursuant to the Health Insurance Portability and Accountability Act of 1996, "an individual has a right of access to inspect and obtain a copy of protected health information about the individual in a designated record set." 45 C.F.R. § 164.524(a)(1). Further, "[t]he covered entity must permit an individual to request access to inspect or to obtain a copy of the protected health information about the individual that is maintained in a designated record set." *Id.* § 164.524(b)(1).

Where a covered entity maintains these records electronically, the Health Information Technology for Economic and Clinical Health Act, also known as the HITECH Act, provides that "the individual shall have a right to obtain from such

covered entity a copy of such information in an electronic format and, if the individual chooses, to direct the covered entity to transmit such copy directly to an entity or person designated by the individual, provided that any such choice is clear, conspicuous, and specific." 42 U.S.C. § 17935(e)(1).  When providing medical records, the regulation entitles the covered entity to "impose a reasonable, cost-based fee." 45 C.F.R. § 164.526(c)(4).  But the statute limits this fee to "the entity's labor costs in responding to the request." 42 U.S.C. § 17935(e)(3).  Notwithstanding this federal regime, States have attempted to regulate the cost entities may charge to provide a person's medical records.  *See* Ohio Revised Code § 3701.741.

Under federal law, MRO must provide medical records in response to a proper request.  Indeed, MRO is legally obligated to do so because Plaintiff has "a right of access to inspect and obtain a copy of protected health information" from it. 45 C.F.R. § 164.524(a)(1).  In light of this federal right, the question for arbitrability is simply: "What have these parties agreed to?" *Coinbase, Inc. v. Suski*, 602 U.S. 143, 148 (2024).  In this case, the record shows that the parties agreed to arbitrate.  Through counsel as her designated third-party representative, Ms. Hudson-Swoope requested electronic copies of her electronic medical records from the Cleveland Clinic.  (ECF No. 12-2, PageID #98.)  Her attorney requested that the Cleveland Clinic "remit the corresponding records with an invoice in accordance with" the requirements of federal law.  (*Id.*, PageID #102.)  Although Ms. Hudson-Swoope's attorney disclaimed responsibility "for any unapproved fees" (*id.*, PageID #99) and pointed out Ohio's limit on fees (*id.*, PageID #102), he paid the invoice from MRO without objection (ECF

16

No. 12-3, PageID #112; ECF No. 12-4, PageID #114), completing the parties' transaction and manifesting assent to its terms. That invoice contained an agreement to arbitrate.

Where, as here, "a court is 'satisfied that the making of the agreement for arbitration . . . is not in issue,' it must send the dispute to an arbitrator." *Coinbase*, 602 U.S. at 148 (quoting 9 U.S.C. § 4). Whether making a prediction of how the Ohio Supreme Court would see the parties' relationship or evaluating it as a matter of federal law in light of the HITECH Act and the regulations under HIPAA, the Court concludes that the parties agreed to arbitrate. Ohio courts recognize contract formation through the sort of conduct at issue here. *See, e.g.*, *Campinha-Bacote v. AT&T Corp.*, 2017-Ohio-5608, at ¶ 13 (Ohio Ct. App. 2017) (click-wrap agreement); *Ranazzi v. Amazon.com, Inc.*, 2015-Ohio-4411, 46 N.E. 3d 213, ¶¶ 12 & 21 (Ohio Ct. App.) (gift cards).

Put another way, the Court's best *Erie* guess is that the Ohio Supreme Court would resolve doubts in favor of arbitration in light of the strong presumption in State law favoring arbitration, *Hayes v. Oakridge Home*, 122 Ohio St. 3d 63, 2009-Ohio-2054, 908 N.E.2d 408, ¶ 15, and by reference to the Sixth Circuit's ruling in *Fazio v. Lehman Brothers, Inc.*, 340 F.3d 386, 395 (6th Cir. 2003). In *Academy of Medicine of Cincinnati v. Aetha Health, Inc.*, 108 Ohio St. 3d 185, 2006-Ohio-657, 842, N.E.2d, 488, ¶ 24, the Ohio Supreme Court held that Ohio courts may determine arbitrability based on *Fazio*. *See also Alexander v. Wells Fargo Fin. Ohio 1, Inc.*, 122 Ohio St. 3d 341, 2009-Ohio-2962, 911 N.E.2d 286, ¶ 23. Therefore, the Ohio Supreme Court and

the Sixth Circuit in *Fazio* "ask if an action could be maintained without reference to the contract or relationship at issue.  If it could, it is likely outside the scope of the arbitration agreement."  340 F.3d at 395 (citation omitted).  Here, Plaintiff cannot maintain this action without reference to her relationship with MRO as the agent for the Cleveland Clinic and without reference to her request for her electronic medical records, including the arbitration agreement.

### I.B.    Plaintiff's Counter-Arguments

To resist arbitration of this dispute, Plaintiff makes two additional arguments, which the Court addresses in turn.

*First*, Plaintiff contends that she is not personally a party to the arbitration agreement and, therefore, not bound by it.  (ECF No. 16, PageID #138–41.)  "Five theories for binding nonsignatories to arbitration agreements have been recognized: (1) incorporation by reference, (2) assumption, (3) agency, (4) veil-piercing/alter ego, and (5) estoppel."  *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 629 (6th Cir. 2003) (citation omitted).  The Court begins and ends its analysis with agency.  "[A]n agent, acting within the scope of his actual authority, expressly or impliedly conferred, can bind the principle," and "the relationship of [an] attorney to his client is that of agent to principal."  *Johnson v. Wells Fargo Bank, NA*, No. 1:22-cv-00513, 2023 WL 4107921, at *2 (N.D. Ohio June 15, 2023) (quoting *Rubel v. Lowe's Home Centers, Inc.*, 597 F. Supp. 2d 742, 744 (N.D. Ohio 2009)).  As an agent for Ms. Hudson-Swoope, her attorney acted with express authority on her behalf, including when he paid the invoice containing the arbitration agreement.  In short, this argument just presents the mirror image of Defendants' standing argument.

18

*Second*, contrary to Plaintiff's position, arbitration agreements do not require a signature to bind the parties and be enforceable.  *See Stachurski v. DirecTV, Inc.*, 642 F. Supp. 2d 758, 766 (N.D. Ohio 2009).  Because Ms. Hudson-Swoope agreed to the services of MRO through her attorney, the agreement to arbitration did not have to be signed.

### I.C.    Conflicting Cases

Cases in West Virginia and New Jersey involve similar allegations that MRO overcharged plaintiffs for retrieval of their medical records.  *See Wilson v. MRO Corp.*, No. CV 2:1605279, 2017 WL 2608541, at *1 (S.D. W. Va. June 15, 2017); *Bernetich, Hatzell & Pascu, LLC v. Med. Recs. Online, Inc.*, 445 N.J. Super. 173, 176, 136 A.3d 955, 957 (App. Div. 2016).  In both, the courts determined that MRO could not enforce its arbitration clause against patients because it lacked consideration to form a contract.  *Wilson*, 2017 WL 2608541, at *11; *Bernetich, Hatzell & Pascu*, 445 N.J. Super. at 184–85, 136 A.3d 955.  In the Court's view, however, this case arises as a matter of a patient's right under federal law to obtain medical records.  These courts acknowledge as much.  *Wilson*, 2017 WL 2608541, at *11 ("MRO did not provide plaintiffs anything more than it was already legally obligated to provide."); *Bernetich, Hatzell & Pascu*, 445 N.J. Super. at 184, 136 A.3d 955 ("MRO did not promise [the plaintiff] anything it was not already obliged to provide.").  While the Court has and expresses no opinion on the State law applicable in those cases, neither case is consistent with the general law on contract formation in the circumstances presented.  Nor is either consistent with the strong national policy in favor of arbitration.  *Hall St. Assocs.*, 552 U.S. at 581 (quoting *Buckeye Check Cashing*, 546 U.S. at 443).  They

19

represent, instead, a holdover of judicial resistance to arbitration.  In any event, Ohio law and the Sixth Circuit enforce arbitration agreements formed in the circumstances present here.

## II.     Scope of the Agreement

"[U]pon being satisfied that the making of the agreement for arbitration . . . is not an issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."  9 U.S.C. § 4.  District courts have the ultimate "authority to decide, as a threshold matter, whether an issue is within the scope of an arbitration agreement." *Fazio*, 340 F.3d at 395 (citing *Stout*, 228 F.3d at 714).  Determining the scope of an arbitration agreement "is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." *International Ass'n Machinists & Aero. Workers v. AK Steel Corp.*, 615 F.3d 706, 711 (6th Cir. 2010) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)).

Plaintiff makes no argument that any of her claims fall outside of the scope of the arbitration agreement.  The arbitration agreement sweeps broadly to reach "[a]ll disputes regarding the charges in this invoice, whether presented by you or by MRO." (ECF No. 12-3, PageID #112.)  Plaintiff's entire action rests on her claim that MRO overcharged her in violation of Ohio law.  (ECF No. 1-1, ¶ 10, PageID #14.)  Therefore, Plaintiff's claims fall squarely within the scope of the arbitration clause.

## III.    Federal Statutory Claims

Plaintiff does not assert federal statutory claims in her complaint.  (ECF No. 1-1, ¶¶ 27–56, PageID #18–22.)  Therefore, the Court need not undertake the

20

third task in considering Defendants' motion to compel arbitration. *See Stout*, 228 F.3d at 714. Still, nothing in the federal right of access to medical records and the limitations on costs that covered entities may charge for them shows that Congress intended disputes over those matters to be non-arbitrable.

## IV.  Claims Subject to Arbitration

Each of Plaintiff's claims arise from and relate to the charges listed on the invoice. (ECF No. 1-1, ¶¶ 27–56, PageID #19–22.) Therefore, all of Plaintiff's claims against MRO are subject to arbitration pursuant to their agreement. *See Javitch v. First Union Sec.*, No. 3:01 CV 780, 2011 WL 665727, *4 (N.D. Ohio Feb. 15, 2011). However, the Court must still determine whether it must stay the proceedings regarding the Cleveland Clinic. *See Stout*, 228 F.3d at 714.

That leaves Plaintiff's claims against the Cleveland Clinic. It argues that, should the Court compel Plaintiff's claims to arbitration, the Court should either dismiss Plaintiff's claims against the Cleveland Clinic or stay the proceedings. (ECF No.11-1, PageID #68–69.) Under the Federal Arbitration Act, "an arbitration agreement must be enforced notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement." *Moses*, 460 U.S. at 20. "In some cases . . . it may be advisable to stay litigation among the non-arbitrating parties pending the outcome of the arbitration. That decision is one left to the district court . . . as a matter of its discretion to control its docket." *Id.* at 20 n.23. "In considering whether to stay a plaintiff's claims against non-arbitrating parties, courts consider such things as whether the arbitrable claims predominate the case and whether the arbitrator's decision can affect the outcome of the non-

21

arbitrable claims." *Obadiah Cam'ron Lord v. Experian Info. Sols., Inc.*, No. 2:23-CV-3949, 2024 WL 1172766, at *1 (S.D. Ohio Mar. 19, 2024).

Here, MRO's alleged overcharging in violation of Ohio law forms the basis of the dispute subject to arbitration. These claims "predominate the case," and an arbitrator's decision will likely "affect the outcome of the non-arbitrable claims." *Obadiah Cam'ron Lord*, 2024 WL 1172766, at *1. Therefore, in its discretion, the Court stays this action against both MRO and the Cleveland Clinic pending arbitration. *Moses*, 460 U.S. at 20 n.23.

## CONCLUSION

For all these reasons, the Court determines that MRO may compel arbitration in this case. Accordingly, the Court **GRANTS** the motion to stay pending arbitration (ECF No. 12), **ORDERS** Plaintiff and MRO to commence arbitration forthwith, **STAYS** this action pending arbitration, **DENIES** Defendants' motions to dismiss for lack of jurisdiction (ECF No. 12; ECF No. 11), and **ORDERS** MRO to file a status report on the status of arbitration no later than September 30, 2025.

**SO ORDERED.**

Dated: March 25, 2025

_____
J. Philip Calabrese
United States District Judge
Northern District of Ohio

22